IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Dimensions Medical Center, Ltd., et al.,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**Saratoga Diagnostics, Inc., et al.,** )<br>)<br>**Defendants.** )<br>)<br>) | No. 16-cv-5608<br><br>Judge Ronald A. Guzmán |

## ORDER

The Court denies Plaintiffs' motion for class certification [35]. Plaintiffs may file an amended motion for class certification addressing only the Rule 23(b) issues, as discussed in this order, within twenty-one days. Status and default hearing set for 5/30/17 at 9:30 a.m.

## STATEMENT

This is a putative "junk fax" class action under the Telephone Consumer Protection Act ("TCPA"), 27 U.S.C. § 227. Plaintiffs Dimensions Medical, Ltd., and America's Health & Resource Center (collectively "Plaintiffs") claim that they and other medical offices were sent unsolicited fax advertisements from defendants Saratoga Diagnostics and its owner, Thomas G. Pallone (collectively "Defendants"). Plaintiffs now seek class certification under Rule 23(b)(2). For the following reasons, the Court denies Plaintiffs' motion.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 23(a) sets out the four prerequisites to class actions, familiarly shorthanded as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Beyond that, class certification requires the satisfaction of at least one of three additional requirements specified in Rule 23(b). Fed. R. Civ. P. 23(b). Under Rule 23(b)(2), a class can be certified if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Id.* District courts have broad discretion in deciding motions for class certification, *Reiter v. Sonotome Corp.,* 442 U.S. 330, 345 (1979), but the party seeking class certification carries the burden of demonstrating that each element is met, *Retired Chicago Police Ass'n v. City of Chi.* 7 F.3d 584, 596 (7th Cir. 1993).

## **DISCUSSION**

Defendants have not filed a response or otherwise appeared in this case, despite being served. (*See* Executed Summons [Dkt. # 19].) Still, Rule 23 imposes an independent duty on the Court to determine that its requirements are met, regardless of a Defendants' failure to respond or challenge the motion for certification. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003). The Court will therefore address Plaintiffs' motion within the familiar framework of Rule 23.

### I.     Class Definition and Ascertainability

Plaintiffs seek certification based on the following class definition:

> Each person that [sic] was sent one or more telephone facsimile messages promoting the commercial availability or quality of property, goods, or services offered by "Saratoga," but not stating on its first page that the recipient may make a request to the sender not to send any future ads and that the recipient may make this request 24 hours a day, 7 days a week.

(Pls.' Br. [Dkt. # 36] at 10.) There are a few problems here: (1) the definition lacks a temporal scope; (2) the reference to "Saratoga" and its goods/services is vague; and (3) the latter part of the definition (regarding the opt-out notice) rests on a mistaken interpretation of the law.

The first two issues can be easily fixed. Although Plaintiffs do not state it in their definition, they note later in their brief that the relevant period is from January 2015 through December 2016. (*Id.* at 11.) Similarly, Plaintiffs clarify in their motion that the offending company is Saratoga Diagnostics Inc. and that the advertisements pertained to a "Cosmetic Training Course" or a "CME Approved Aesthetics Workshop" sponsored by the "Saratoga CME Institute." (*Id.* at 2.) Accordingly, the class definition is amended as follows:

> Each person who was sent one or more telephone facsimile advertisements by Saratoga Diagnostics Inc. between January 2015 and December 2016, promoting a cosmetic training course or CME approved aesthetics workshop by Saratoga Diagnostics Inc. or the Saratoga CME institute.

*See Mullins v. Direct Dig., LLC*, 795 F.3d 654, 672 (7th Cir. 2015) (explaining that the class definition must simply be framed in terms of "objective criteria," such as the identification of a particular group, harmed during a particular time frame, in a particular way); *Kasalo v. Harris & Harris, Ltd.* 656 F.3d 557, 563 (7th Cir. 2001) ("The obligation to define the class falls on the judge's shoulders under [Rule 23]."); *see also Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 822 (N.D. Ill. 2016) (certifying a class that received unsolicited calls under the TCPA during a one-year period); *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 140 (N.D. Ill. 2009) (certifying a class of "all persons and entities" who were sent the subject fax).

The remaining portion of Plaintiffs' proposed definition will not do: ". . . but not stating on its first page that the recipient may make a request to the sender not to send any future ads and that the recipient may make this request 24 hours a day, 7 days a week." This phrase appears to

be premised upon the TCPA's opt-out provisions, which require that a fax ad must meet the following requirements regardless of a customer's consent: (1) the notice must be "clear and conspicuous and on the first page of the advertisement"; (2) the notice must state "that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under [47 C.F.R. 64.1200(a)(4)(v)] is unlawful"; (3) the notice provides either a domestic contact telephone number and facsimile machine to make the aforementioned request or a "separate cost-free mechanism . . . to transmit a request pursuant to such notice to the sender of the advertisement" any time, "24 hours a day, 7 days a week." 47 C.F.R. § 64.1200(a)(4)(iii)(D)-(E).

The subject faxes in this case meet those criteria, however. They plainly state that the recipient may opt out of receiving more faxes and that "failure to comply within 30 days . . . is unlawful." (*See* Faxes [Dkt. # 36-1] at 4-6.) The numbers listed to opt out are toll free, and the opt-out notice is clearly listed on the bottom of the fax, with bold and underlined text. (*See id.*) Plaintiffs disagree in two respects: (1) they claim the notice is not clear and conspicuous because it is "in tiny print, compressed beneath other information contained in the fax," and (2) they insist the faxes must state that customers may opt out "24 hours a day, 7 days a week" in order to comply with 47 C.F.R. § 64.1200(a)(4)(E). (Pls.' Br. [Dkt. # 36] at 6-7.)

As noted, the Court simply disagrees with the first proposition. The font is large enough to be read easily, and it is conspicuously underlined and emboldened. The second proposition, moreover, misinterprets 47 C.F.R. § 64.1200(a)(4)(E). The regulation states that "[t]he telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week." This requires

4

only that the sender *provide* a toll-free number (which the subject faxes did) to opt-out and that this number be *available for use* at all times — an interpretation supported by comparing other subjections of the regulation that use precise language to specify what must appear on the face of a fax ad. *See, e.g.,* 47 C.F.R. § 64.1200(a)(4)(A), (B) (using phrases such as "the notice must state" and the "notice must be . . . on the first page"). To wit, the Court has not found, and Plaintiffs have not cited, any case law suggesting that fax ads must state that the opt-out number is available "24 hours a day, 7 days a week," so this part of the class definition is eliminated, and the amended definition (above) stands.[1]

## II. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The precise number of persons in the class need not be specified, nor are plaintiffs required to establish the exact identity of the class members. *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989) (citation omitted). A plaintiff may not, however, rely solely on conclusory allegations of class size. *Id.*

To that end, Plaintiffs have submitted a Broadcast Fax Job Summary Report, obtained through Defendants' third-party fax company, Westfax. (*See* Pl.'s Mot [Dkt. # 74, Ex. B].) The report indicates Defendants caused Westfax to successfully send 3,275,873 faxes between January 2015 and December 2017. (*Id.*) Although it is unclear whether each of those numbers represents a distinct individual, the Court is satisfied that the class is sufficiently large to warrant

---

[1] The Court notes that Plaintiffs still have a claim for receiving unsolicited faxes regardless of the opt-out notice. *See* 47 U.S.C. § 227(a) (making it unlawful to send "unsolicited advertisements"). The "unsolicited" element need not be stated in the class definition, however, as it is an affirmative defense. *See Parko v. Shell Oil Co.,* 739 F.3d 1083, 1085 (7th Cir. 2014) (explaining that a class definition does not need to negative affirmative defenses; to do so would be "putting the cart before the horse"); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3803 (2006) (explaining that prior express consent is an affirmative defense to liability under the TCPA's "junk fax" provisions).

certification. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 291 (N.D. Ill. 2014) (certifying nation-wide class with 1.6 million members); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995) (explaining that numerosity is typically satisfied where the class has 40 or more members); *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008) (similarly relying on a defendant's third-party fax company's report to establish numerosity);

### III. Commonality

Next, with respect to "commonality," Rule 23(a)(2) requires that questions of law or fact common to the class must exist. Fed. R Civ. P. 23(a)(2). This is generally satisfied where the class claims concern a "common nucleus of operative fact" and where the defendant has engaged "in standardized conduct towards members of the proposed class." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998). The commonality requirement does not, however, "demand that every member of the class have an identical claim. It is enough that there are one or more common questions of law or fact." *Spano v. The Boeing Co,* 633 F.3d 574, 585 (7th Cir. 2011). In other words, factual variation among the class grievances does not preclude certification. *Rosario v. Livaditis,* 963 F.2d 1013, 1017–18 (7th Cir. 1992).

Here, the class claims plainly arise from a common nucleus of operative fact: Defendants' use of a third party (Westfax) to send the subject fax to people across the country. The class claims, moreover, involve the application of the same legal principles, such as (1) the provisions of the TCPA and its corresponding regulations, (2) whether Defendant's fax was an "advertisement" under the TCPA, and (3) whether the class is entitled to statutory damages. Although it is unclear how many (if any) members of the class may have consented to the advertisements, Defendants have not raised this defense, and the mere possibility that some class

members consented does not warrant denial of class certification. *See GM Sign, Inc. v. Group C Commc'ns,* No. 08 C 4521, 2010 WL 744262, *3 (N.D. Ill. Feb. 25, 2010). Accordingly, the Court finds that there are sufficiently common questions of law and fact among the class.

## IV. Typicality

Rule 23(a)(3) further requires that "the claims or defenses of the representative parties" must also be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The representative's claims are deemed to be typical if they "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Here, Plaintiffs' claims are typical of the other class members: they involve the same legal theories and facts (e.g., whether a fax was sent without consent). The only possible difference is that Plaintiffs aver they never consented to receiving the subject faxes, whereas other class members may have. But again, this alone does not defeat certification. *See Dunn v. City of Chi.*, 231 F.R.D. 367, 372 (N.D. Ill. 2005) ("Typicality is satisfied if a plaintiff's claim arises from the same event, practice, or course of conduct that gives rise to the claims of the other class members, and the claims are based on the same legal theory.").

## V. Adequacy

As the named representative, Plaintiffs must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This aspect of Rule 23 is satisfied if the representative possesses the same interests and suffered the same injury as the class members. *Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 985 (7th Cir. 2002). Plaintiffs fit squarely within this requirement: they received an identical (or similar) unsolicited fax from

Defendants and are seeking the same relief. Plaintiffs' interests and the class members' are therefore sufficiently aligned.

### (A) *Class Counsel*

In addition to the named representative, Rule 23 further requires that class counsel be qualified, experienced, and able to adequately represent the interests of the class. Fed. R. Civ. P. 23(g). Counsel should show that "they would prosecute the case in the interest of the class . . . rather than just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts." *Creative Montessori Learning Ctr. v. Ashford Gear LLC,* 662 F.3d 913, 917 (7th Cir. 2011). If class counsel has been found adequate in other cases, it "is persuasive evidence that they will be adequate again." *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 334 (N.D. Ill. 2001).

To that end, Plaintiffs' counsel has submitted a firm resume that states as follows: the firm is dedicated solely to class actions; the team working on this case is composed of lawyers averaging ten to twenty years experience with commercial litigation; and members of the firm have been appointed class counsel in over thirty class actions (including many TCPA cases). (*See* Book and Hatch Stmt. [Dkt. # 36. Ex G].) The Court is thus satisfied that class counsel will adequately litigate this case.

### VI. Rule 23(b)(2)

Plaintiffs' request certification under Rule 23(b)(2), which allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Court can dispense with this request at the outset.

In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court held Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." 564 U.S. 338, 360 (2011). Here, the TCPA provides statutory damages for each violation, *see* 47 U.S.C. 227(b)(3), and although Plaintiffs seek a declaration that Defendants violated the TCPA and an injunction to prevent future violations, it is clear that what they are after is statutory damages on a class-wide basis. (*See* Compl. [Dkt. # 1] at 12) (seeking $500 in statutory damages for each TCPA violation and requesting the Court to exercise its discretion and impose treble damages for willful violations). In other words, an injunction would not be the "final relief" contemplated by Rule 23(b)(2). *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005) (holding that a claim for damages does not automatically require decertification under Rule 23(b)(2), but that the damages must be merely incidental). Courts in this circuit, moreover, have routinely found certification inappropriate for TCPA class actions under Rule 23(b)(2), and this Court will follow suit. *See, e.g., Wolfkiel v. Intersections Ins. Servs.*, 303 F.R.D. 287, 293 (N.D. Ill. 2014); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 516 (E.D. Wis. 2014); *Cholly v. Uptain Grp., Inc.*, No. 15 C 5030, 2015 U.S. Dist. LEXIS 171415, at *9 (N.D. Ill. Dec. 22, 2015).

Plaintiffs may, of course, seek certification under a different subsection of Rule 23(b), given that the Court is satisfied that Rule 23(a)'s requirements are met. They may accordingly file an amended motion for class certification addressing only Rule 23(b)'s requirements within twenty-one days.

**CONCLUSION**

For the reasons set forth above, the Court denies Plaintiffs' motion for class certification [35]. Plaintiffs may file an amended motion for class certification addressing only the Rule 23(b) issues, as discussed in this order, within twenty-one days. Status and default hearing set for 5/30/17 at 9:30 a.m.

**SO ORDERED.**                           ENTERED:  May 9, 2017

_____
**HON. RONALD A. GUZMÁN**
**United States District Judge**